Argued March 5; affirmed March 11, 1930

# STATE *v.* BROOM

(285 P. 817)

*James K. King* of Eugene (Potter & King of Eugene on the brief) for appellant.

*Gordon S. Wells* and *Eugene V. Slattery,* both of Eugene (I. H. Van Winkle, Attorney General, and Alta King, District Attorney, of Eugene, on the brief) for the state.

RAND, J. The defendant, John Broom, and Barkey Broom, his brother, were jointly indicted, charged with the commission of the crime of setting up and operating a distillery for the manufacture of intoxicating liquor for beverage purposes. The defendant was tried separately and convicted of the crime charged. He has appealed and assigns as error the admission in evidence, over his objection, of four exhibits designated as state's exhibits "I", "J", "K" and "L", and also the overruling of his motion for a directed verdict.

Section 7 of chapter 30, Laws 1923, as amended by chapter 157, Laws 1925, provides that:

"No distillery shall be set up or operated in this state for the purpose of manufacturing intoxicating liquors, for beverage purposes, nor be used in the manufacture thereof. Any device or any process which separates alcoholic spirits from any fermented substance shall be regarded as a distillery. * * *"

Upon the trial of the cause the state offered evidence tending to show that this defendant at the time of the commission of the crime charged in the indictment was living in a remote and mountainous section of Lane county about one-fourth mile north of the McKenzie highway and that his codefendant was living with him at the time; that two deputy sheriffs, upon receiving information that intoxicating liquor was being manufactured for beverage purposes by the defendants, went to said premises and, finding no one at the house of defendant, followed a trail leading therefrom to a point about three-quarters of a mile from the house where another trail took off from the main trail leading to a tent about 200 yards from the intersection of the two trails, and, upon entering the tent, found defendant's said codefendant then engaged in the actual distillation of intoxicating liquor from a considerable quantity of mash then in the tent. They also found brooder lamps, which defendant's said codefendant was then using for heating the mash, and other apparatus and equipment suitable for and then being used in the manufacture of intoxicating liquor. The brooder lamps or burners were operated by the use of kerosene oil and when the officers arrived there was no supply of kerosene oil in the tent except that contained in the burners themselves. The officers arrested and took into custody defendant's said codefendant and one of them then left for the purpose of guiding other officers to the scene of the crime. Some three or four hours later this defendant was seen approaching the tent carrying a pack upon his back and when about 50 feet therefrom was arrested by the officer and was found to be carrying a five-gallon can of kerosene oil such as was being used at the time in heating the mash. Shortly thereafter this defendant

escaped from the officer and after running a short distance down the trail was recaptured and brought to the tent. Upon the arrival of the other officers, the equipment and apparatus found in the tent were destroyed and said defendants were both taken to the cabin of defendant where they stopped to enable the defendants to obtain and take with them such clothing as they desired while under arrest.

The evidence shows that the main trail from the house to the intersection of the two trails had been frequently used; that but little if any use had been made of the main trail beyond that point, and that the trail leading therefrom terminated at the tent. The evidence further shows that after the defendants had been arrested and taken to the cabin a large number of corks was found in the cabin and also another pack was found similar to that which defendant was carrying when arrested and which contained another five-gallon can of kerosene oil. Upon reaching the jail, the defendants were then searched and an examination made of the suitcases they had brought with them from the cabin.

A large number of exhibits, taken from defendants and from the cabin occupied by them, was offered in evidence upon the trial. Among those so offered and received are the four now objected to. Exhibit "I" is a printed document containing directions for installing and operating oil burners. It also contained a diagram of one of such burners. This document was taken from this defendant's possession while he was under arrest and in jail. When offered in evidence by the state, defendant objected to its admission upon the ground that the oil burner illustrated on the diagram was of a different kind than the one which had been taken from defendants and which had been already

received in evidence. The state claimed that there was a similarity between the two and that the instructions given in the document were applicable to the burner which had already been offered and received in evidence. The learned trial court was of the opinion that the fact of defendant being in possession of this document might be of some probative value and that his possession of it was a circumstance which the jury would have the right to consider in determining the guilt or innocence of the defendant and, hence, overruled the objection and permitted the same to be received in evidence. With this ruling we concur. The question of its admissibility was for the court. The weight to be given to it was a question for the jury.

■ Exhibits "J" and "K" were two used corks which had been taken from this defendant's pocket and were similar to a supply which was on hand in the cabin at the time of the arrest. The two corks so offered and received in evidence were of a size to fit certain jugs and bottles found in the tent and were properly introduced in evidence.

■ Exhibit "L" was an iron tube found in the cabin at the time of defendant's arrest which was identical in shape and size with a heating tube that was actually in use in one of the burners. It was not error for the court to permit this spare tube to be received in evidence.

■ We find no merit in defendant's contention that it was error for the court to refuse to direct the jury to acquit. The record is replete with testimony showing facts and circumstances tending to connect the defendant with the commission of the crime charged. Finding no error in the record, the judgment appealed from must be affirmed.

Coshow, C. J., McBride and Rossman, JJ., concur.